UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIO ISLEY SMITH,

                                 Plaintiff,

     vs.                                                   9:06-CV-505 (LEK/GJD)

GARY GREENE, Superintendent, et al.,

                                 Defendants.
_____

JULIO ISLEY SMITH, Plaintiff pro se
STEVEN H. SCHWARTZ, AAG, Attorney for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

     In this amended civil rights complaint, plaintiff alleges that he was transferred to another facility in retaliation for writing a letter of complaint to the New York State Inspector General's Office. (Dkt. No. 10). Plaintiff also alleges that his life was placed in danger because defendants spread rumors to other inmates about the nature of plaintiff's crime. Finally, plaintiff alleges that, after he was transferred, an unknown officer denied plaintiff access to his "medically prescribed therapeutic devices" and left him in a cold cell.

     Plaintiff seeks substantial monetary relief. Presently before the court is a motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) filed on behalf of

defendants Greene, Kelly, and Levine. (Dkt. No. 22). Plaintiff has responded in opposition to the motion. (Dkt. No. 30). For the following reasons, this court agrees with defendants and will recommend dismissing the amended complaint.

## DISCUSSION

1. **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).

In determining whether a complaint states a cause of action, great liberality is afforded to pro se litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted). For purposes of a Rule 12(b)(6) motion, the "complaint" includes any written instrument attached to the complaint and any statements incorporated into it by reference. *Gant v. Wallingford Bd. of Education*, 69 F.3d 669, 674 (2d Cir. 1995)(citations omitted).

2. **Procedural History**

Before discussing the motion to dismiss, the court will review the procedural history of this case for clarity. Plaintiff's original complaint was insufficient under FED. R. CIV. P. 8(a), and District Judge Lawrence E. Kahn issued a conditional order of dismissal, affording plaintiff an opportunity to correct the deficiencies and file an

amended complaint. (Dkt. No. 7).  Plaintiff filed his amended complaint, naming Gary Greene, Superintendent of Great Meadow Correctional Facility; C.F. Kelly, Jr., Captain; James Levine, Prison Guard; Michael Molisani, Prison Guard; Colleen Russell, Prison Guard; and two "John Doe," Prison Guard defendants. (Dkt. No. 10).

Although District Judge Kahn allowed the amended complaint to proceed, he ordered the dismissal of defendants Molisani and Russell because the only allegations against these two defendants were related to the alleged assault of another inmate.[1] (Dkt. No. 12 at 2, 3).  Judge Kahn also advised plaintiff that he could not proceed against unknown defendants, and that if he wished to continue the action against the "John Doe" officers, plaintiff would have to seek to identify them, move to amend the complaint accordingly, and have them served with process. *Id.* at 2.  Plaintiff was also advised that if the individuals are not timely served, the action would be dismissed against them. *Id.*  District Judge Kahn's order was dated December 21, 2006. *Id.* at 3.

Although plaintiff's response to defendants' motion to dismiss appears to contain names for the previously "John Doe" defendants, plaintiff has not yet moved to amend his amended complaint to add these individuals so that they can be served. Thus, the remaining defendants are defendants Greene, Captain Kelly, and Officer Levine.

3.  **Facts**

Plaintiff alleges that on February 27, 2006, he witnessed another Muslim

---

[1] Plaintiff alleges that defendant Molisani assaulted a fellow inmate, and defendant Russell covered up the assault. Amended Complaint (AC) at ¶¶ 24-25.

3

prisoner being beaten by Correction Officer Molisani. Amended Complaint (AC) ¶¶ 17, 24.  Plaintiff states that as a result of this assault, plaintiff filed a "racial assault charge" and sent the written complaint to the New York State Inspector General. AC ¶ 17.  Plaintiff states that on March 15, 2006, defendant Kelly told the guards in plaintiff's housing unit to put plaintiff on "72 hour investigation."  Plaintiff claims that on March 16, 2006, he was told by an inmate clerk that he was "on the 'DRAFT' PK'D" out of the prison, and that later, several prison guards ordered plaintiff to pack his things immediately. AC ¶ 19.

Plaintiff claims that as he was sitting in the "draft room/basement," he heard defendant Levine on the telephone telling someone that plaintiff was not "ready." AC ¶ 20.  Plaintiff alleges that after defendant Levine hung up the telephone, he told plaintiff that if the "Boss" wanted plaintiff transferred, he would be transferred. *Id.* Later plaintiff states that John Doe No. 1 was "very abusive" and told the facility laundry supervisor "why" plaintiff was being transferred out of Great Meadow so suddenly. AC ¶ 27.

Plaintiff states that he was then taken to Auburn Correctional Facility, where he was allegedly placed in the Special Housing Unit (SHU) because the Inspector General was coming to interview him. AC ¶ 21.  Plaintiff states that the guards were "nasty" and that plaintiff was strip searched and placed in a cell with no bedding and a broken light switch. *Id.*  Plaintiff also claims that he was ordered to turn over his back brace, his TENS unit, his pain medication, his blood pressure medication, and his personal heating pad. AC ¶ 22.  Plaintiff claims that John Doe No 2 was responsible

4

for this treatment. AC ¶ 22.  Plaintiff alleges that after he filed his civil rights complaint, he was the "target of harassment and retaliation" by other unnamed guards at Auburn Correctional Facility. AC ¶ 28.

The amended complaint contains claims of retaliation based upon plaintiff's complaint to the Inspector General.  The amended complaint also appears to allege some Eighth Amendment claims against an unknown officer at Auburn Correctional Facility.

## 4.     Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for ***adverse action*** taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).  Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137.

The Second Circuit has defined "adverse action" as "'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . .

constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)(quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003))(omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

In this case, plaintiff meets the first prong of the test for retaliation. There is no dispute that his complaint to the Inspector General's office was protected activity. Rather, defendants first argue that there was no "adverse" action taken by any one of the remaining defendants against him that was substantially motivated by plaintiff's complaint. Defendants argue that because plaintiff was merely transferred from one maximum security facility to another, he suffered no adverse action because the ultimate confinement was not more restrictive. Defendants state that the "only" instances in which the Second Circuit has upheld a claim of retaliatory transfer have been where the inmate was transferred to a facility with more restrictive conditions. Defendants' Memorandum of Law at 3.

There is one district court in the Western District of New York that has found that a transfer from one maximum security facility to another does not rise to the level of "adverse action." *Warren v. Goord*, 99-CV-296, 2006 U.S. Dist. LEXIS 41096, *40-48 (W.D.N.Y. May 26, 2006). In *Warren*, the District Court found that plaintiff failed to allege that the transfer from one facility to another resulted in any additional deprivation of privileges sufficient to deter an individual of "ordinary firmness" from pursuing his claims, nor did the transfer result in any "actual injury" sufficient to

6

confer standing. *Id.* at \*47-48.

Notwithstanding the court's decision in *Warren*,[2] this court is not willing to find that *as a matter of law*, no adverse action can occur if the plaintiff is transferred from one maximum security facility to another. Although in the Second Circuit cases cited by defendants,[3] the plaintiffs happened to have been transferred to a facility with more restrictive conditions, the Second Circuit did not specifically hold that this was "required" in order to rise to the level of adverse action sufficient to state a claim for retaliation.

Defendants cite *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) as support for the proposition that, in order to be adverse, a transfer must be to a facility with a higher security level. While it is true that *one* of the transfers that Bennett alleged was retaliatory was from a lower to a higher level of security, another transfer was from Attica (maximum security) to Gowanda (medium security). *Id.* at 136. The other transfer challenged by Bennett as retaliatory was to Cayuga Correctional Facility (also medium security). *Id.* The Second Circuit did not differentiate between the transfers, and stated that Bennett's allegations of retaliation were further supported by the fact that "all relevant adverse actions" were found to have been unjustified. *Id.* at 138. The court then listed the "adverse actions," and one of them was the "transfer from Attica

---

[2] The court must also point out that *Warren* was decided pursuant to a motion for summary judgement, after the Second Circuit remanded the case for further consideration of various issues, including whether plaintiff had stated a valid First Amendment retaliation claim. 2006 U.S. Dist. LEXIS 41096 at \*8-9.

[3] *Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002); *Bennet v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

to Gowanda." *Id.* Thus, it does not appear that the fact that a transfer is from one facility to another of the same security level automatically prevents the action from being adverse for purposes of a retaliation claim.

In any event, plaintiff states that he was placed in the Special Housing Unit[4] (SHU) when he arrived at Auburn. AC ¶ 20. Plaintiff claims that he was told that he was being placed in SHU because the Inspector General was "coming to talk to [him]." *Id.* In plaintiff's response to defendants' motion to dismiss, plaintiff claims that he was not taken out of SHU until he "agreed to mind [his] affairs." (Dkt. No. 30 at 6). It is unclear what could have been meant by this statement, and the statement was not made by any of the defendants that are currently making this motion to dismiss.[5] However, because this is a motion to dismiss based upon the face of the complaint, this court cannot find that plaintiff's transfer was not "adverse." The court will proceed to consider the other factors in the analysis of a retaliation claim.

---

[4] The SHU is used, *inter alia*, for disciplinary housing and is a more restrictive form of confinement than general population. The court is also aware that SHU may be used for incoming inmates prior to their assignment to a housing unit in general population. However, without more information, and based solely on a motion to dismiss, this court cannot make that assumption, and as stated above, must assume the truth of the statements in the amended complaint.

[5] The court also notes that in his opposition to the motion to dismiss, plaintiff has now associated names with the "John Doe" defendants. Plaintiff is advised that simply putting the name of the John Doe defendant in his response does not make these individuals defendants. In order to make these individuals defendants in this case, plaintiff must move to amend his complaint to include not only the names of the John Doe defendants, but the new amended complaint must be served on these defendants. Thus, if plaintiff wishes the case to proceed against these new individuals, he must properly move to amend his complaint.

### A. Defendant Levine

In order to state a claim for retaliation, plaintiff must also show that his constitutionally protected activity was a ***substantial motivating factor*** in the defendants' adverse action. *Bennett*, 343 F.3d at 137.  Defendant Levine is mentioned in two paragraphs of the amended complaint. AC ¶ 20, 26.  The only allegation made against defendant Levine is that he received a telephone call while plaintiff was nearby awaiting transfer.  Plaintiff states that he overheard a conversation that defendant Levine had with an unknown party regarding plaintiff's status.  Defendant Levine then told plaintiff that if the "boss" wanted plaintiff out of the facility, he would be "out of here." *Id.*  Plaintiff later states that defendant Levine was the officer assigned with Officer "Counon"[6] to "rush" plaintiff out of the facility. AC ¶ 26.

It is unclear to whom defendant Levine was speaking.  The fact that defendant Levine referred to the individual as "The Boss," or called him "sir" on the telephone, does not mean that the person on the other end of the telephone was defendant Greene or any other named defendant.  Since defendant Levine is a corrections officer, he had many superiors that he was required to call "Sir."  There is absolutely no allegation that defendant Levine, a corrections officer who was merely guarding plaintiff as he awaited transfer, had any involvement in the decision to transfer plaintiff or even knew the reason that he was being transferred.  Even if someone had called defendant Levine to try to rush plaintiff's transfer, there is absolutely no basis for any allegation that defendant Levine's actions were somehow related to plaintiff's complaint to the

---

[6] This corrections officer is not named as a defendant in this case.

Inspector General. No claim for retaliation against defendant Levine may be made with these allegations alone, and the complaint may be dismissed as against defendant Levine.

### B.  Defendant Kelly

The only allegation plaintiff makes against defendant Kelly is that on March 16, 2006, defendant Kelly told the officers in plaintiff's housing unit to put plaintiff on a "72 hour investigation." AC ¶ 18. Plaintiff states that defendant Kelly did not answer plaintiff when plaintiff asked why the investigation was being performed. *Id.* Plaintiff states that he filed his complaint with the Inspector General on February 27, 2006. AC ¶ 17.

First, there is ***no indication*** that defendant Kelly had any involvement in the decision to transfer plaintiff. Second, Plaintiff does not allege how defendant Kelly knew about the complaint or how defendant Kelly's actions in ordering a "72 hour investigation" would have been "adverse" to plaintiff. Plaintiff does not claim that this "investigation" involved more restrictive confinement or any other deprivation that would have deterred an inmate of "ordinary firmness" from pursuing his constitutional rights. Finally, there is no indication that the decision to place plaintiff on a "72 hour investigation" was in any way related to plaintiff's February 27, 2006 complaint. Thus, as it is written, the amended complaint does not state a claim against defendant Kelly and may be dismissed as to this defendant.

### C.  Defendant Greene

Plaintiff alleges that defendant Greene, the Superintendent of Great Meadow

Correctional Facility, ordered plaintiff to be taken out of the facility while several state officials were in the administration building attempting to visit plaintiff in order to interview him regarding his complaint. AC ¶ 23.  Plaintiff does allege that defendant Greene was responsible for the transfer order. *Id.*  Defendants argue that plaintiff does not state a claim for retaliation because "the Inspector General's Office could not be deterred from a proper investigation merely because an inmate is transferred from one facility to another." Defendants' Memorandum of Law at 3.

The analysis of a retaliation claim, however, does ***not*** focus on whether the Inspector General's Office would be deterred from investigating, but whether an inmate of "ordinary firmness" would be deterred from raising his constitutional claims. *Gill*, 389 F.3d at 381.  The fact that the Inspector General's staff was finally able to interview plaintiff would not change the defendants' motivation for transferring plaintiff.  If the transfer was substantially motivated by a desire retaliate against plaintiff for filing his complaint or to delay or prevent plaintiff from speaking with investigators, plaintiff may still state a claim.  Because this is a motion to dismiss, the court must accept the facts as stated in the complaint.  Therefore, the court will recommend denying the motion to dismiss as to defendant Greene.

5.  **Dismissal**

The Second Circuit has held, that when the court dismisses a pro se action on the pleadings, the plaintiff should be given an opportunity to amend his complaint to state a claim. *See Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (citations omitted)(court should not dismiss without granting leave to amend at least

once when the complaint gives "any indication" that a valid claim may be stated). In this case, the court is recommending dismissal as to defendants Levine and Kelly, and the court is recommending that the motion to dismiss be denied on behalf of defendant Greene. The court will recommend dismissal without prejudice to plaintiff moving to amend his complaint. Although the court is recommending dismissal without prejudice, *the plaintiff is cautioned that conclusory allegations are also insufficient to state a constitutional claim*. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(conclusory allegations are insufficient to state a claim for relief under section 1983).

As stated above, the plaintiff appears to now have identified the John Doe defendants from Auburn Correctional Facility against whom plaintiff has made various allegations. In order to have the case proceed against these defendants, plaintiff must include them in his proposed amended complaint if he should move to amend. Plaintiff is also cautioned that *some of the claims that he makes against these John Doe defendants are insufficient to rise to the level of constitutional claims*. Any allegation of verbal abuse, no matter how vulgar, does not rise to the level of a constitutional violation, thus, stating that a proposed defendant was "very abusive" does not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats or verbal harassment without injury, "although indefensible and unprofessional," do not rise to the level of constitutional violations). If plaintiff moves to amend his complaint, he should *not* add such allegations to the

claims.

Plaintiff is also reminded that if he should move to amend his complaint, he must include a *complete* proposed amended complaint with his motion to amend, and that any second amended complaint must supercede and replace the first amended complaint.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the motion to dismiss filed on behalf of defendants Greene, Levine, and Kelly (Dkt. No. 22) be **GRANTED IN PART**, and the amended complaint be **DISMISSED WITHOUT PREJUDICE AS TO DEFENDANTS LEVINE AND KELLY**, and it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 22) be **DENIED AS TO DEFENDANT GREENE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 26, 2007

Hon. Gustave J. DiBianco
U.S. Magistrate Judge