UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JULIO ISLEY SMITH,

                                      Plaintiff,

          vs.                                                               9:06-CV-505
(GTS/ATB)

GARY GREENE, Superintendent, et al.,

                                        Defendants.

_____

JULIO ISLEY SMITH, Plaintiff pro se
STEVEN H. SCHWARTZ, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Glenn T. Suddaby, United States District Judge, to whom this case was re-assigned on October 2, 2008.

In this amended civil rights complaint, plaintiff alleges that he was transferred from one prison to another in retaliation for writing a letter of complaint to the New York State Inspector General's Office. (Dkt. No. 10).[1]  Plaintiff seeks substantial monetary relief.

Presently before this court is a motion for summary judgment, pursuant to FED.

---

[1]  Plaintiff also alleged that his life was placed in danger because certain defendants spread rumors to other inmates about the nature of plaintiff's crime.  Finally, plaintiff alleged that, after he was transferred, an unknown officer denied plaintiff access to his "medically prescribed therapeutic devices" and left him in a cold cell.  As a result of prior rulings in this case, discussed below, the defendants against whom the additional allegations were made have been dismissed from the case or were never named in the complaint or served.

R. CIV. P. 56, by the sole remaining named defendant, Gary Greene, Superintendent (Dkt. No. 49).  Plaintiff has responded in opposition to the motion by what he labeled a "Cross-Motion for Summary Judgment" (Dkt. No. 54).  Plaintiff thereafter filed an additional affidavit in support of his cross-motion (Dkt. No. 62).

For the following reasons, this court recommends that the defendant's motion for summary judgment should be denied without prejudice.  This court concludes that the plaintiff should be granted a brief opportunity to conduct additional discovery to determine which employee(s) of the New York State Department of Corrections (DOCS) were personally involved in the decision to transfer him and, if warranted, to amend his complaint.  This court further recommends denial of plaintiff's "Cross-Motion" for summary judgment.[2]

## DISCUSSION

1. <u>**Procedural History**</u>

The court will review the relevant procedural history of this case for clarity. Plaintiff's original complaint, filed on April 25, 2006, was insufficient under FED. R. CIV. P. 8(a), and District Judge Lawrence E. Kahn issued a conditional order of dismissal, affording plaintiff an opportunity to correct the deficiencies and file an amended complaint. (Dkt. No. 7).  Plaintiff filed his amended complaint, naming Gary

---

[2] Plaintiff's response to defendant's motion is labeled "Cross-Motion" for summary judgment and requests judgment in his favor, however, plaintiff's subsequent affidavit requests ***only*** that defendant's motion for summary judgment be denied and that plaintiff  be afforded an opportunity to present his case at trial. *Compare* Dkt. No. 54 *with* Dkt. No. 62. This court finds that notwithstanding the title of plaintiff's papers, they should be treated as opposition to defendant's motion; and to the extent plaintiff actually intended to file a cross-motion for summary judgment, the motion should be denied.

Greene, Superintendent of Great Meadow Correctional Facility; C.F. Kelly, Jr.,

Captain; James Levine, Prison Guard; Michael Molisani, Prison Guard; Colleen

Russell, Prison Guard; and two "John Doe," Prison Guard defendants. (Dkt. No. 10).

In an order, dated December 21, 2006, District Judge Kahn allowed the

amended complaint to proceed, but ordered the dismissal of defendants Molisani and

Russell because the only allegations against these two defendants were related to the

alleged assault of another inmate.[3] (Dkt. No. 12 at 2, 3).  Judge Kahn also advised

plaintiff that he could not proceed against unknown defendants, and that if he wished

to continue the action against the "John Doe" officers, plaintiff would have to seek to

identify them, move to amend the complaint accordingly, and have them served with

process. *Id.* at 2.  Plaintiff was also advised that if the individuals were not timely

served, the action would be dismissed against them. *Id.*

On March 28, 2007, defendants moved to dismiss the amended complaint for

failure to state a cause of action, pursuant to FED. R. CIV. P. 12(b)(6) (Dkt. No. 22).

Although plaintiff's response to defendants' motion to dismiss (Dkt. No. 30) appeared

to contain names for the "John Doe" defendants, plaintiff never moved to further

amend complaint to add these individuals, and they have never been served.  By order

dated March 24, 2008, District Judge Kahn granted the motion to dismiss with respect

to defendants Kelly and Levine, but not as to Superintendent Greene (Dkt. No. 40).

On the day after the motion to dismiss was decided, Magistrate Judge DiBianco

---

[3] Plaintiff alleges that defendant Molisani assaulted a fellow inmate, and defendant
Russell covered up the assault. (Amended Complaint (AC) at ¶¶ 24-25).

entered a scheduling order, allowing discovery until September 30, 2008 and setting a January 30, 2009 deadline for the filing of dispositive motions. (Dkt. No. 41). Magistrate Judge DiBianco extended the discovery deadline until November 30, 2008 and the motion deadline until March 30, 2009. (Dkt. Nos. 45, 46)[4].

Defendant's summary judgment motion was filed on March 27, 2009. (Dkt. No. 49).  The motion relied, in part, on "sealed" Exhibit A, setting forth the reasons for the plaintiff's transfer, which is the basis for plaintiff's claim of retaliation. (Dkt. No. 49-2, at 1, ¶ 2).  Plaintiff's cross-motion for summary judgment was filed on June 3, 2009. (Dkt. No. 54).  On June 8, 2009, Magistrate Judge DiBianco granted plaintiff's letter-motion, allowing him to see a copy of the defendant's Exhibit A and giving plaintiff until July 10, 2009 to make any additional arguments supporting his cross-motion.  Plaintiff filed an additional affidavit on October 5, 2009. (Dkt. No. 62).

## 2.   <u>Facts</u>

Plaintiff alleges that on February 27, 2006, he witnessed Correction Officer Molisani beat another Muslim inmate. (Amended Complaint (AC)  ¶¶ 17, 24). Plaintiff states that as a result of this assault, he filed a "racial assault charge" and sent the written complaint to the New York State Inspector General (IG). (AC ¶ 17). Plaintiff states that on March 15, 2006, defendant Kelly told the guards in plaintiff's

---

[4] The court notes that the Magistrate Di Bianco extended the deadlines after plaintiff sent a letter complaining about defense counsel's delay in producing requested documents. (Dkt. No. 35).  Magistrate Judge Di Bianco ordered plaintiff's letter stricken because it was not in the proper form for a motion to compel. (Dkt. No. 46).  However, in the "strike" order, Magistrate Judge Di Bianco stated that "[i]n light of plaintiff's pro se status, the Court is extending the pretrial deadlines . . . ." *Id.*

housing unit to put plaintiff on "72 hour investigation." (AC  ¶ 18).  Plaintiff claims that on March 16, 2006, he was told by an inmate clerk that he was "on the 'DRAFT' PK'D" out of the prison, and that later, several prison guards ordered plaintiff to pack his things immediately.  (AC ¶ 19).

Plaintiff claims that as he was sitting in the "draft room/basement," he heard defendant Levine on the telephone telling someone that plaintiff was not "ready." (AC ¶ 20).  Plaintiff alleges that after defendant Levine hung up the telephone, he told plaintiff that if the "Boss" wanted plaintiff transferred, he would be transferred. *Id.* Plaintiff claims, in conclusory fashion, that defendant/Superintendent Gary Greene ordered him to be taken out of Great Meadow while several state officials were in the administrative building coming to speak with plaintiff about his complaint to the IG. (AC ¶ 23).  Plaintiff states that he was then taken to Auburn Correctional Facility, where he was allegedly told that he was being placed in the Special Housing Unit (SHU) because the IG was coming to interview him. (AC ¶ 21).

The amended complaint contains claims of retaliation based upon plaintiff's complaint to the IG.[5]  With respect to the sole remaining named defendant, Superintendent Gary Greene, the alleged act of retaliation was ordering his subordinates to transfer plaintiff from Great Meadow to Auburn.

---

[5] The amended complaint also appears to allege some Eighth Amendment claims against an unknown officer at Auburn Correctional Facility.  As noted above, the plaintiff never named the "John Doe" defendants at the Auburn facility in an amended complaint and they have never been served.

3.     **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmovant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the nonmovant's claims or (2) identifying those portions of the nonmovant's evidence that demonstrate the absence of a genuine issue of material fact.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 323).  The second method requires the movant to identify evidentiary insufficiency, not merely to deny the opponent's pleadings.  *Id*.

6

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.* Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). Plaintiff in this case has responded to defendants' motion; however, the court will still carefully review the entire record in making its determination.

## 4.    <u>Eleventh Amendment</u>

It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v.*

7

*Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991)(citations omitted).

The amended complaint does not specify whether defendant is being sued in his individual or official capacity.  The defendant correctly argues that, to the extent that he is being sued in his official capacity for money damages, that cause of action should be dismissed under the Eleventh Amendment. *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 414 (2d Cir. 1999).  Thus, to the extent that the amended complaint can be read to allege claims against defendant in his official capacity, the court will recommend dismissal of any such claim, and will evaluate the amended complaint assuming that it makes claims against Superintendent Greene in his ***individual*** capacity.

## 5.   <u>Retaliation</u>

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  "A prisoner has no liberty interest in remaining at a particular correctional facility, . . . but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights . . . ." *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998).

The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations.  *Bennett v. Goord*, 343

F.3d at 137.  Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137.

Defendant's motion for summary judgment skirts the merits of the plaintiff's retaliation claim, and focuses on whether he was personally involved in the decision to transfer plaintiff to another prison.[6]

### 6.   **Personal Involvement**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or

---

[6] Defendant Greene does not address the merits of plaintiff's claim that he was transferred in retaliation for making the complaint to the IG or that he was transferred in order to prevent him from speaking to the IG.  Defendant Greene does argue that he is entitled to qualified immunity.  That argument is discussed below.

custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

In support of his motion for summary judgment, Superintendent Greene argues he had no personal involvement in the decision to transfer the plaintiff out of Great Meadow.  In his Declaration, defendant Greene directly denies the allegation in the amended complaint that he "ordered his prison guards to get rid of plaintiff before plaintiff had the opportunity to give a statement to . . . the Office of the Inspector General." (Dkt. No. 49-3, ¶ 4).  Defendant Greene states that he delegated to subordinates in his facility matters involving the transfer of inmates to other facilities, and that the Guidance Unit staff were responsible for initiating inmate transfer reviews (Greene Decl. ¶¶ 5, 6).  Defendant Greene also states that  pursuant to DOCS Directive No. 4017, entitled "Inmate Transfer Procedure," the DOCS Office of Classification and Movement ("OCM") in Albany had the sole authority to and did issue transfer orders for inmates in maximum security facilities. (Greene Decl. ¶ 5 & Exhibit B).  Defendant refers to plaintiff's "Inmate Transfer History," which indicates that his transfer was recommended by "an unidentified individual" on March 16, 2006 for the reasons stated therein. (Greene Decl. ¶ 7 & Exhibit A).[7]

---

[7] The stated reasons for plaintiff's transfer, set forth on Exhibit A to the summary judgment motion, which was originally submitted as a "sealed" exhibit, but was later ordered disclosed to the plaintiff, were: "ARRIVED AT GREAT MEADOW 10/30/03.  ASSIGNED TO AD SEG [administrative segregation] 3/16/05.  HX [history] INCLUDES REPORTS FOR WEAPONS, VIOLENT COND, THREATS, CREATE DISTURB.  PER SECURITY

Defendant Greene states that, although he has no specific recollection of the plaintiff, or any of the alleged incidents giving rise to the instant lawsuit, his review of the documents confirms that he did not make "the decision" to transfer plaintiff on March 16, 2006, and that, in the more than three years that he was Superintendent at Great Meadow, he "never 'ordered,' 'directed,' or otherwise effectuated an inmate's transfer out of the facility for any reason" (Greene Decl. ¶¶ 7, 9). Finally, defendant argues that the plaintiff, himself, states "that less than three weeks prior to his transfer, on February 27, 2006, he wrote a letter to Superintendent Green asking to 'be transferred out' of Great Meadow, because he 'fear[ed] for his personal health and safety.'" Def. Mem. of Law at 5. (Dkt. No. 49-6).

Plaintiff takes issue with defendant's claim that he has no authority to make transfer decisions. (Pl. "Explanation of Facts at 1-2, Dkt. No. 54). He observes that someone at Great Meadow must have supplied the information set forth as the reasons for his transfer in the Inmate Transfer History, and assumes that the Superintendent of the prison must have been aware of and involved in initiating plaintiff's transfer. (Pl. Statement of Material Facts ¶ 7, Dkt. No. 54-1). Plaintiff claims that the reasons for his transfer were fabricated, listing incidents of misconduct in which he never engaged, including prior incidents involving weapons and conspiring to injure the prison staff. (Pl. Statement of Material Facts ¶ 2). Finally, plaintiff correctly notes

---

INVESTIGATION, SMITH HAS BEEN INSTIGATING OTHER INMATES TO PLOT ATTACK ON SECURITY STAFF IN RETALIATION FOR UI [unusual incident] RESULTING IN USE OF FORCE ON INMATE 00A5789 WRIGHT, CLEO ON 2/27/06. TRANSFER RECOMMENDED TO ANY SUITABLE FACILITY."

that while his complaint alleges that he requested to be moved from the "vicinity" of a particular correction officer at Great Meadow, he did not, as defendant's Memorandum of Law suggests, request a transfer out of the facility.  (AC ¶ 14).  In any event, the reasons stated for plaintiff's transfer in the Inmate Transfer History do not relate or refer to any prior requests he made.

Defendant Greene tries to negate his "personal involvement" in the transfer of inmates, including the plaintiff, based largely on the fact that the DOCS Office of Classification and Movement ("OCM") has the final authority to order a transfer in such cases.  However, it is apparent, and defendant acknowledges, that unnamed DOCS employees at Great Meadow would have initiated the transfer review and supplied pertinent information regarding the possible reasons for plaintiff's transfer. In *Davis v. Kelly*, the Second Circuit recognized the possibility that a warden or other employee at a prison could be personally "involved" in a transfer decision by initiating a transfer request, and could potentially be liable for retaliation under 42 U.S.C. § 1983, even though the final decision to order the transfer rested with the DOCS "Division" of Classification and Movement. *Davis v. Kelly*, 160 F.3d 917, 920-21 (2d Cir. 1998).

In this case, defendant Greene's Declaration is artfully drafted; and it is not entirely clear the extent to which he denies ***any*** involvement in or awareness of the initiation of the request to transfer the plaintiff out of Great Meadow, as opposed to denying making the ultimate decision, which was vested in DOCS OCM.  Defendant's sworn denials of personal involvement, when weighed against plaintiff's asserted

12

assumptions and conclusions, might well suffice to establish the absence of a material issue of fact on the question of ***his*** personal involvement.

However, while Greene acknowledges that others at the Great Meadow facility must have been involved in initiating the plaintiff's transfer review and supplying the reasons for a possible transfer, the persons involved have not been identified.  And, while a legitimate reason for plaintiff's transfer is set forth in the Inmate Transfer History, the defendant does not provide a Declaration of any person with direct knowledge of the actual reasons for the transfer to counter the plaintiff's claim that the stated reasons were pretextual and untrue.

The plaintiff's abrupt transfer occurred seventeen days after he filed a written complaint to the IG regarding an alleged racially-motivated beating of another inmate by correctional officers and on the same day the IG's representative allegedly came to Great Meadow to interview the plaintiff.[8]  The circumstances of the transfer, to the extent they are not rebutted by DOCS officials with knowledge of the reasons for the transfer, raise a question of fact regarding whether retaliation was a substantial motivation for the transfer.  *See, e.g., Bennett v. Goord*, 343 F.3d 133, 137-38, 139 (2d Cir. 2003) (the temporal proximity between the favorable settlement of plaintiff's lawsuit against DOCS and the alleged adverse action provides circumstantial evidence

---

[8] Defendant has not rebutted the plaintiff's allegations that he was transferred on the same day a representative of the IG came to Great Meadow to interview the plaintiff about the alleged assault plaintiff witnessed on February 27, 2006.  (AC ¶ 23)  Defendant Greene acknowledges that the transfer of the plaintiff was initiated and carried out on the same day–March 16, 2006 (Greene Declaration, ¶ 9).  And, the stated reasons for the transfer, although non-retaliatory if true, relate in part, to plaintiff's response to the alleged assault he witnessed. *See* Def. Ex. A, quoted in footnote 7, above.

of retaliation, at least in the absence of contrary affidavits of knowledgeable prison officials).

In similar circumstances, the Second Circuit in *Davis v. Kelly*, characterized as "premature" a motion for summary judgment in which a prison warden denied personal involvement in an alleged retaliatory prison transfer.  Judge Newman explained why he concluded that the plaintiff should be provided with a further, brief opportunity to conduct discovery and, perhaps, to join other named defendants:

> . . .  The affidavits submitted in support of [warden] Kelly's motion for summary judgment contain his averment that he had no personal involvement, but provide no indication of the identity of the officials at Attica who initiated either the request to cancel the Wende transfer or to order the Clinton transfer. Morrissey, reporting from his vantage point at DOCS [DCM/OCM], attributes the initiation of the two actions to "Attica staff." Though Morrissey identifies what may well be legitimate reasons that might have motivated both actions, he does not claim to have personal knowledge of whether these were the real reasons.
>
> Of course, neither Kelly nor Morrissey were obligated at that point to provide the names of the officials who had carried out the transfer, since [plaintiff] Davis had not asked for such names. In fact, none of Davis's discovery requests, had they been granted, was likely to uncover the identities of the parties involved. Davis seems to have assumed that Kelly either executed the transfer order himself or had personal knowledge of it.  Nonetheless, Davis could not reasonably have been expected to understand prison transfer procedures or to be able to identify the officials involved. Moreover, without the assistance of an attorney, his failure to make the necessary inquiries is understandable.
>
> In similar circumstances, courts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability. [Citations omitted.]

Similarly, courts have rejected the dismissal of suits against unnamed
defendants described by roles . . . until the plaintiff has had some opportunity
for discovery to learn the identities of responsible officials. [Citations omitted.]

\* \* \*

. . . [I]n some instances, their identification might produce evidence from them
that they acted at the supervisor's instruction, thus putting in issue the
supervisor's denial of personal involvement.

\* \* \*

We therefore hold that when a *pro se* plaintiff brings a colorable claim against
supervisory personnel, and those supervisory personnel respond with a
dispositive motion grounded in the plaintiff's failure to identify the individuals
who were personally involved, under circumstances in which the plaintiff would
not be expected to have that knowledge, dismissal should not occur without an
opportunity for additional discovery.

*Davis v. Kelly,* 160 F.3d at 920-921.

Based on this authority, the court will recommend that defendant Greene's

motion for summary judgment be denied, without prejudice.  The court concludes that

plaintiff should be provided a brief opportunity to conduct additional discovery so he

may attempt to ascertain the identity of the individuals at the Great Meadow facility

involved in the decision to transfer him and determine whether the stated reasons for

his transfer were genuine.

As stated above, plaintiff did obtain some discovery.  His letter to Magistrate

Judge Di Bianco complained that defendants were not producing certain requested

documents. (Dkt. No. 45).  In that letter, plaintiff included a letter that he sent to

defense counsel, requesting information regarding why former defendant Kelly placed

plaintiff on 72-hour hold; a copy of the "change sheet" and log book for March 16, 2006; together with other information regarding plaintiff's transfer. (Dkt. No. 45 at 6). Even though the letter was stricken by the court, defense counsel filed a "letter-brief" on September 23, 2008, stating that the discovery requested in plaintiff's September 11, 2008 letter "was mailed to plaintiff" the day after defense counsel received the responses from his clients. (Dkt. No. 44).  Because discovery is not filed, this court has no way of knowing what documents were actually produced for plaintiff, and it is unclear whether the documents would have apprised plaintiff of the individuals responsible for his transfer.

As the Second Circuit observed in *Davis v. Kelly*:

> Of course, after an opportunity for appropriate discovery has been afforded, [the defendant] may renew his motion for summary judgment. He will be entitled to prevail (a) if [the plaintiff] cannot raise a genuine issue of material fact disputing [the defendant's] evidence of lack of personal involvement, (b) if [the plaintiff] cannot present evidence permitting an inference that the cancellation and transfer orders were retaliatory, or (c) even if [the defendant's] involvement is fairly in dispute, he presents evidence of the affirmative defense that the cancellation and transfer orders would have been issued in the absence of a retaliatory motive, . . . and [the plaintiff] fails to raise a genuine issue of material fact concerning this defense. [Citations omitted.]

160 F.3d at 922.

Plaintiff is also reminded that if he moves to amend his complaint and is permitted to do so, he must include a complete proposed amended complaint with his motion to amend, and that any second amended complaint must supercede and replace the first amended complaint.

7.   **Qualified Immunity**

Qualified immunity protects defendants from liability for acts which do not violate a clearly established constitutional right of which a reasonable defendant would have known. *Scotto v. Almenas*, 143 F.2d 105, 110 (2d Cir. 1998)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 810 (1982)).  The inquiry must be directed at the "objective reasonableness" of the defendants' acts. *Farid v. Goord*, 200 F. Supp. 2d 220, 244 (W.D.N.Y.  2002).

It is well-established that an official may not transfer an inmate in retaliation for the exercise of a constitutional right. *Davis v. Kelly*, 160 F.3d at 920.  In this case, defendant alleges that he is entitled to qualified immunity because the evidence establishes that defendant Greene "did not engage in the conduct plaintiff attributes to him." ( Def. Mem. of Law at 7, Dkt. No. 49-6).  Thus, defendant's claim of qualified immunity is based solely upon the allegation that he was not personally involved in plaintiff's transfer and therefore, did not violate any of plaintiff's constitutional rights. Because there are potential questions of fact regarding personal involvement, the court will not recommend dismissal of the action based upon qualified immunity at this time.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 49) be **GRANTED ONLY TO THE EXTENT THAT IT MAY BE READ TO ALLEGE ANY "OFFICIAL CAPACITY" CLAIMS**, and it is

**RECOMMENDED**, that defendant Greene's motion for summary judgment

17

(Dkt. No. 49) be **DENIED WITHOUT PREJUDICE IN ALL OTHER**

**RESPECTS,** and if this recommendation is adopted, that plaintiff be allowed **SIXTY**

**(60) DAYS** from the date of the District Judge's order for further discovery and, if

warranted at the end of the sixty days, another **THIRTY (30) DAYS** to file a motion

to amend his complaint, and it is

      **RECOMMENDED**, that plaintiff's cross motion for summary judgment (Dkt.

No. 54) be **DENIED.**

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


Dated: February 3, 2010

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**