UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIO ISLEY SMITH,

                        Plaintiff,

                                                              9:06-CV-0505
v.                                                            (GTS/ATB)

GARY GREENE, Superintendent;
JOHN DOE, Prison Guard; and
JOHN DOE,

                        Defendants.
_____

APPEARANCES:

JULIO ISLEY SMITH, 99-A-6505
    Plaintiff, *Pro Se*
Attica Correctional Facility
P.O. Box 149
Attica, New York 14011

HON. ANDREW M. CUOMO                          JAMES SEAMON, ESQ.
Attorney General for the State of New York    Assistant Attorney General
    Attorney for Defendants
The Capitol
Albany, New York 12224

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this *pro se* prisoner civil rights action filed by Julio Isley

Smith ("Plaintiff") against former Great Meadow Correctional Facility Superintendent Gary

Greene ("Defendant"), are (1) Defendant's motion for summary judgment (Dkt. No. 49), (2)

Plaintiff's cross motion for summary judgment (Dkt. No. 54), (3) Plaintiff's affidavit in further

support of his cross-motion (Dkt. No. 62),[1] and (4) United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Defendant's motion be granted in part and denied in part.  (Dkt. No. 64.)  Neither party has submitted any Objections to the Report-Recommendation.  For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety; and Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

Plaintiff filed his Amended Complaint in this action on December 12, 2006.  (Dkt. No. 10.)  Generally, construed with the utmost of liberality, Plaintiff's Amended Complaint alleges that, between approximately February 27, 2006, and March 16, 2006, while Plaintiff was incarcerated at Great Meadow Correctional Facility in Comstock, New York ("Great Meadow C.F."), the above-captioned Defendants violated his constitutional rights.  More specifically, Plaintiff alleges, *inter alia*, that in February 2006, he filed a formal grievance with the New York State Inspector General ("NYSIG") after witnessing an alleged beating of a fellow Muslim prisoner named Cleo Wright.  Plaintiff further alleges that, as a result of filing this grievance, Defendant Greene retaliated against him, in violation of his First Amendment rights, by ordering his transfer to Auburn Correctional Facility ("Auburn") on March 16, 2006, the same day that state officials from the NYSIG's office arrived at Great Meadow C.F. to interview Plaintiff about his grievance.  (*See generally* Dkt. No. 10 [Plf.'s Am. Compl.].)  Plaintiff also alleges that the John Doe Defendants subjected him to excessive force, in violation of the Eighth Amendment.

---

[1]    With regard to Plaintiff's cross-motion (Dkt. No. 54) and Plaintiff's subsequent affidavit in support thereof (Dkt. No. 62), the Court agrees with Magistrate Judge Baxter's finding in his Report-Recommendation that Plaintiff's cross-motion and his subsequent affidavit in support thereof should be treated as Plaintiff's response to Defendant's motion for summary judgment.  (*See* Dkt. No. 64, at 2 n.2.)

Familiarity with the remaining factual allegations of Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

On March 27, 2009, Defendant Greene filed a motion for summary judgment seeking dismissal of all of Plaintiff's claims. (Dkt. No. 49.) Generally, in support of his motion for summary judgment, Defendant argues as follows: (1) Plaintiff's claims against Defendant are barred by the Eleventh Amendment; (2) Plaintiff has failed to establish that Defendant was personally involved in the alleged violations; and (3) Defendant is entitled to qualified immunity. (*Id.*)

On June 3, 2009, after an extension of time was granted by the Court, Plaintiff filed a response in opposition to Defendant's motion. (Dkt. No. 54.) In his response, Plaintiff argues as follows: (1) Plaintiff's Amended Complaint states a claim against Defendant Greene in his individual capacity, and therefore is not barred by the Eleventh Amendment; (2) Plaintiff has alleged facts plausibly suggesting that Defendant Greene was personally involved in transferring him to Auburn; and (3) Defendant Greene is not entitled to qualified immunity. (*Id.*) On October 5, 2009, Plaintiff submitted an affidavit in further support of his response to Defendant's motion. (Dkt. No. 62.) In his affidavit, Plaintiff states that the transfer order of March 16, 2006, contains the name of Defendant Greene as "requester" and that he can prove that this transfer was requested on the same day that the assistant to the NYSIG came to interview Plaintiff about the incident involving Cleo Wright.

On February 3, 2010, Magistrate Judge Baxter issued a Report-Recommendation recommending (1) that Plaintiff's claims against Defendant Greene in his official capacity be dismissed, (2) that Defendant Greene's motion for summary judgment be denied without

prejudice in all other respects, (3) that Plaintiff be allowed sixty days from the date of the

undersigned's instant Decision and Order for further discovery and, if warranted at the end of the

sixty days, another thirty days to file a motion to amend his Amended Complaint, and (4) that

Plaintiff's cross-motion for summary judgment be denied.  (Dkt. No. 64.)  Familiarity with the

grounds of Magistrate Judge Baxter's Report-Recommendation is assumed in this Decision and

Order.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

When specific objections are made to a magistrate judge's report-recommendation, the

Court makes a "*de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made."  *See* 28 U.S.C. § 636(b)(1)(C).[2]  When

only general objections are made a magistrate judge's report-recommendation, the Court reviews

the report-recommendation for clear error or manifest injustice.  *See Brown v. Peters*, 95-CV-

1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd*

---

[2]        On *de novo* review, "[t]he judge may . . . receive further evidence . . . ."  28
U.S.C. § 636(b)(1)(C).  However, a district court will ordinarily refuse to consider arguments,
case law and/or evidentiary material that could have been, but was not, presented to the
Magistrate Judge in the first instance.  *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132,
1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has
no right to present further testimony when it offers no justification for not offering the testimony
at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am.
World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court
did not abuse its discretion in denying plaintiff's request to present additional testimony where
plaintiff "offered no justification for not offering the testimony at the hearing before the
magistrate").

*without opinion*, 175 F.3d 1007 (2d Cir. 1999).[3]  Similarly, when a party makes no objection to a

portion of a report-recommendation, the Court reviews that portion for clear error or manifest

injustice.  *See Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995)

(Sotomayor, J.) [citations omitted]; Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983

Addition [citations omitted].  After conducing the appropriate review, the Court may "accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge."  28 U.S.C. § 636(b)(1)(C).

###### B.    Standard Governing a Motion for Summary Judgment

Magistrate Judge Baxter correctly recited the legal standard governing a motion for

summary judgment.  (Dkt. No. 64, at 6-7.)  As a result, this standard is incorporated by reference

in this Decision and Order.

### III.    ANALYSIS

Neither party has submitted objections to the Report-Recommendation.  In addition, after

carefully reviewing all of the papers in this action, including Magistrate Judge Baxter's Report-

Recommendation, the Court concludes that Magistrate Judge Baxter's thorough Report-

Recommendation is correct in all respects.  (Dkt. No. 64, at 7-17, [Report-Recommendation].)

Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and

reasonably applied the law to those facts.  (*Id.*)  As a result, the Court accepts and adopts the

---

[3]       *See also Vargas v. Keane*, 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report . . . [did not] redress the constitutional violations [experienced by petitioner] . . . is a general plea that the Report not be adopted . . . [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd*, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895 (1996).

Report-Recommendation in its entirety for the reasons stated therein.[4]

The Court would add only two points.  First, the Court reads *Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998), as requiring the denial (without prejudice) of Defendant's motion for summary judgment, under the circumstances, merely out of an abundance of special solicitude to Plaintiff as a *pro se* civil rights litigant.  The Court cautions Plaintiff that, once that further special solicitude has been rendered (in the form of an *additional* opportunity to conduct discovery, and an *additional* opportunity to file a motion for leave to file a Second Amended Complaint), if the same record evidence is presented to the Court (as is now presented to the Court on the current motion for summary judgment), the Court may well rule in favor of Defendant.

Second, during any renewed motion for summary judgment, Defendant is permitted to address the issue of whether sending a letter to the NYSIG complaining about the use of excessive force against a fellow inmate (with no indication that the letter was sent *on behalf of* that fellow inmate) is activity protected by the First Amendment.  The Court notes that it appears far from certain that such activity is in fact protected by the First Amendment.[5]  It should be emphasized that the only types of prisoner litigation activity protected by the First Amendment are (1) an attack on the plaintiff's sentence, directly or collaterally, and (2) a challenge to the conditions of the plaintiff's confinement.[6]  It should also be emphasized that inmates have only a

---

[4]        The Court notes that the Report-Recommendation would survive even a *de novo* review.

[5]        *See Nevares v. Morrisey*, 95-CV-1135, 1991 WL 760231, at *6 (S.D.N.Y. Sept. 27, 1999) ("Complaining aloud to correction officers about the treatment of another inmate while that inmate is being forcibly removed from his cell is not [constitutionally protected activity under the First Amendment].") [citation omitted].

[6]        *See Lewis v. Casey*, 518 U.S. 343, 355 (1996) ("*Bounds* [*v. Smith*, 430 U.S. 817 (1977)] does not guarantee inmates the wherewithal to transform themselves into litigating

limited First Amendment right to assist other inmates with their legal claims.[7]  Finally, it should

be emphasized also that Plaintiff's letter to the NYSIG–as alleged–contains no indication that it

was sent on behalf of, and/or even with the knowledge of, Inmate Wright.[8]

     **ACCORDINGLY**, it is

     **ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 64) is

**<u>ACCEPTED</u>** and **<u>ADOPTED</u>** in its entirety; and it is further

     **ORDERED** that Defendant's motion for summary judgment (Dkt. No. 49) is **<u>GRANTED</u>**

---

engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.
The tools it requires to be provided are those that the inmates need in order to attack their
sentences, directly or collaterally, and in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the incidental (and perfectly
constitutional) consequences of conviction and incarceration.") [emphasis in original].

    [7]    *See Shaw v. Murphy*, 532 U.S. 223, 227-32 (2001) ("[E]ven if we were to
consider giving special protection to particular kinds of speech based upon content, we would
not do so for speech that includes legal advice.  Augmenting First Amendment protection for
inmate legal advice would undermine prison officials' ability to address the complex and
intractable problems of prison administration. . . .  Although supervised inmate legal assistance
programs may serve valuable ends, it is indisputable that inmate law clerks are sometimes a
menace to prison discipline and that prisoners have an acknowledged propensity . . . to abuse
both the giving and the seeking of [legal] assistance. . . .  We thus decline to cloak the provision
of legal assistance with any First Amendment protection above and beyond the protection
normally accorded prisoners' speech.") [internal quotation marks and citations omitted];
*Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999) ("To the extent that Nicholas asserts a right
to provide legal assistance to other inmates, we note that such claims are usually analyzed under
the constitutional rubric of the right of access to the courts. . . .  The considerable body of
caselaw that has provided definition to that right is not directly implicated in this case, as we
earlier dismissed Nicholas's right of access claim as frivolous.  We express no view as to the
extent, if any, that a First Amendment associational right could protect the right to associate for
the purpose of discussing law-related issues . . . .").

    [8]    (Dkt. No. 10, ¶ 17 [Plf.'s Am. Compl., alleging merely that "[o]n February 27,
2006 plaintiff filed a racial assault charge against the parties in connection with [an assault
against fellow inmate Celo Wright] and immediately sent said written complaint to the State[']s
Inspector General . . . ."].)

**in part**, to the extent that it requests the dismissal of any "official capacity" claims asserted in Plaintiff's Amended Complaint; and it is further

ORDERED that Plaintiff's Amended Complaint is **<u>DISMISSED</u>** to the extent that it asserts any "official capacity" claims against Defendant Greene; and it is further

ORDERED that Defendant's motion for summary judgment (Dkt. No. 49) is **otherwise** **<u>DENIED</u> without prejudice** in all other respects; and it is further

ORDERED that Plaintiff is **<u>GRANTED</u> SIXTY (60) DAYS** from the date of this Decision and Order to conduct further discovery so that he may attempt to ascertain the identity of the individuals at the Great Meadow C.F. involved in the decision to transfer him, and determine whether the stated reasons for his transfer were genuine; and it is further

ORDERED that, if warranted at the end of the sixty (60) days, Plaintiff is granted another **THIRTY (30) DAYS** to file a motion to amend his Amended Complaint; and it is further

ORDERED that Defendant is granted the opportunity to file a second motion for summary judgment; and it is further

ORDERED that Plaintiff's cross-motion for summary judgment (Dkt. No. 54) is **<u>DENIED</u>**.

Dated: March 16, 2010
         Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge